IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DELIA E. JORGE-COLON

    Plaintiffs

      v.                                    **Civil No. 09-1571 (SEC)**

MANDARA SPA PUERTO RICO, INC.;
JOHN DOE AND ABC INSURANCE CO.

    Defendants

**OPINION AND ORDER**

Pending before this Court is Co-defendant Mandara Spa Puerto Rico, Inc.'s ("Defendant" or "Mandara") Motion to Compel Arbitration and Stay Proceedings (Docket # 4), Plaintiff Delia E. Jorge-Colon's ("Plaintiff") opposition thereto (Docket # 7), and Defendant's reply (Docket # 10). After reviewing the filings, and the applicable law, Defendant's request to compel arbitration is **GRANTED**.

**Factual Background**

On June 23, 2009, Plaintiff filed the present suit under Title VII of the Civil Rights Act of 1964 (Title VII), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e *et seq*, the Family Medical Leave Act ("FMLA"), 5 U.S.C. § 2601 *et seq*, Puerto Rico Law No. 3 of March 13, 1942, 29 L.P.R.A. § 469, and Law No. 80 of May 30, 1976, 29 L.P.R.A. §185a, *et seq*.[1] According to Plaintiff, Defendant discriminated against her because of her pregnancy, and failed to adequately notify her about her rights under the FMLA. On August 5, 2009, Defendant filed a motion to compel arbitration and requesting a stay of the proceedings. Docket # 4. Therein, Defendant contends that pursuant to Mandara's Employee Dispute Resolution Policy ("DRP"), which was signed by Plaintiff on October 25, 2004, the present case should be referred

---

[1] Plaintiff also ascertains diversity jurisdiction insofar as she resides in Georgia, and Defendants are residents of other States.

to arbitration, and stayed pending resolution of the same. Plaintiff opposes, arguing that labor disputes arising under Title VII and analogous statutes may be raised directly before the federal courts, without first resorting to arbitration. Defendant replied, reasserting its prior arguments.

### Applicable Law and Analysis

In Puerto Rico, arbitration is strongly favored as an alternative conflict-resolution mechanism. Quiñones-González v. Asoc. Cond. Playa Azul II, 161 P.R. Dec. 668 (2004). Puerto Rico's Arbitration Act, P.R. Laws Ann. tit. 32, § 3201, provides that two or more parties:

> may agree in writing to submit to arbitration any dispute which may be the object of an existing action between them at the time they agreed to the arbitration, or they may include in a written agreement a provision for the settlement by arbitration of any dispute which may arise in the future between them from such settlement or in connection therewith. Such an agreement shall be valid, enforceable and irrevocable except for the grounds prescribed by law or equity for the reversal of an agreement.

See also Federal Arbitration Act, 9 U.S.C. § 2.

Similarly, Congress has set forth a policy favoring arbitration. See Soto-Alvarez v. AIMCO, 561 F. Supp. 2d 228, 230 (D.P.R. 2008). In fact, "Congress enacted the FAA in order '[t]o overcome judicial resistence to arbitration,'" Garrison v. Palmas del Mar Homeowners Ass'n, 538 F. Supp. 2d 468, 472 (D.P.R. 2008) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)), "'...encourage speedy resolution of disputes and to bind parties to their voluntary agreements.'" Id. (citing Ideal Unlimited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. 75, 76 (D.P.R. 1989)). Likewise, it sought to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," and to "place arbitration agreements 'upon the same footing as other contracts,'" De Jesus-Santos v. Morgan Stanley Dean Witter, Inc., No. 05-1336, * 13, 2006 U.S. Dist. LEXIS 24327 (D.P.R. Mar. 22, 2006) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-220 (1985), and Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)). In so doing, Congress set forth that "arbitration  is simply a matter of a contract between

the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

Pursuant to the Federal Arbitration Act ("FAA"),[2] a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "[t]he FAA mandates the district court to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district court's discretion over whether to compel arbitration or provide a judicial remedy to the parties." Soto-Alvarez, 561 F. Supp. 2d at 230.[3] On this issue, the Supreme Court has held that "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter, 470 U.S. 213, 218 (1985).

In interpreting the FAA, the First Circuit has held that a party who attempts to compel arbitration must show that (1) a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope. Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); see also Soto-Alvarez, 561 F. Supp. 2d 228, 230 (D.P.R. 2008); Sanchez-Santiago v. Guess, Inc., 512 F. Supp. 2d 75, 78 (D.P.R. 2007); Milliman, Inc. v. Health Medicare Ultra, Inc.,

---

[2] Since the FAA was promulgated under Congress' power under the Commerce Clause, it is applicable in state as well as federal courts. Southland Corp. v. Keating, 465 U.S. 1, 12 (1984).

[3] The question of arbitrability, however, is "an issue for judicial determination." Mun. Of San Juan v. Corp. para el Fomento Economico, 415 F.3d 145, 149 (1st Cir. 2005) (citing AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. at 649).

CIVIL NO. 09-1571 (SEC)                                                                    4

641 F. Supp. 2d 113, 117 (D.P.R. 2009).[4] If there is a valid arbitration clause, and the controversy falls under its scope, the court will direct the parties to proceed to arbitration unless the party compelling arbitration has waived the right to do so, or there exists grounds for revocation of the contractual agreement. See Combined Energies v. CCI Inc., 514 F.3d 168, 171 (1st Cir. 2008) (citations omitted).

In general, agreements to arbitrate are "generously construed." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration...," and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also AT & T Technologies, Inc. v. Communications Workers of America, Inc., 475 U.S. 643, 650 (1986) (citations omitted); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995); Mun. Of San Juan v. Corp. para el Fomento Economico, 415 F.3d 145. This presumption of arbitrability was originally developed in cases dealing with labor relations arbitration controversies, but has since been extended to cover all other cases under the FAA. Kaplan, 514 U.S. at 943.

---

[4] This District has held that under the FAA, "[w]hen deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Garrison, 538 F. Supp. 2d at 472, n. 3 (citing Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 152, 155 (D. Me. 1999)). "Only if all three prongs of the test are satisfied will a motion to compel arbitration be granted." Id. (citing Combined Energies v. CCI, Inc., 514 F.3d 168 (1st Cir. 2008)).

Considering the foregoing, this Court must first determine whether the DRP and Handbook are enforceable. As mentioned earlier, "arbitration is a matter of contract," therefore, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Intergen, 344 F.3d at 142 (citing AT&T, 475 U.S. at 648; see also Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80 (1998) (holding that a collective-bargaining agreement must contain a clear and unmistakable waiver of the employees' rights to a judicial forum for federal discrimination claims); Kaplan, 514 U.S. at 945 (finding that a party can be forced to arbitrate only those issues he specifically agreed to submit to mediation); Mun. Of San Juan, 415 F.3d at (citations omitted). As a result, "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims." Id. (citing McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994).

Courts have held that "state contract law principles govern the validity of an arbitration agreement." Soto-Alvarez, 561 F. Supp. 2d at 230; see also Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281 (1995). Under Puerto Rico law, "the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation." Id. (citing P.R. Laws Ann. tit. 31, § 3391. A party's consent is not valid if "'given by error, under violence, by intimidation, or deceit.'" Soto-Alvarez, 561 F. Supp. 2d at 230; see also Sanchez-Santiago, 512 F. Supp. 2d at 79.

In the present case, Plaintiff does not question the arbitration agreement's existence, nor does she allege error, violence, intimidation or deceit that would invalidate her consent to the terms of Mandara's DRP, and Policies and Procedure Handbook ("Handbook").[5]  Instead, the record shows that Plaintiff signed Mandara's DRP and the Handbook, attesting that she read and

---

[5]  In Pelletier v. Yellow Transportation, 549 F.3d 578, 580 (1st Cir. 2008), the First Circuit upheld the district court's granting of summary judgment and compelling arbitration even though Plaintiff was told she would not be hired if she refused to sign the employer's Dispute Resolution Agreement..

agreed to their contents. See Dockets ## 4-2 & 4-3. Both the DRP and Handbook provide, in pertinent part, that arbitration is "the required and exclusive forum for the resolution of all disputes relating to and arising out of [the employees'] employment or the termination of employment (and which are not resolved by the internal dispute resolution procedure), including but not limited to claims, demands or actions under Title VII of the Civil Rights Act of 1964 ... and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, compensation, benefits or termination of employment." Dockets ## 4-2 & 4-3. Therefore, the arbitration clause's language clearly provides for compulsory arbitration of all disputes relating to and arising out Plaintiff's employment, or termination of employment with Mandara, including Title VII claims, and other federal and local statutory remedies. Insofar as Plaintiff's claims arise out of her employment with Defendant, they fall squarely within the clause's scope. As such, there is a valid agreement to arbitrate, voluntarily agreed to by Mandara and Plaintiff. Moreover, Defendant is entitled to invoke the arbitration clause, and Plaintiff is bound by that clause. Accordingly, the four aforementioned requisites are met, and as a result, the present claims are subject to compulsory arbitration.

Notwithstanding, Plaintiff argues that pursuant to the Supreme Court's decisions in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981), and McDonald v. City of West Branch Michigan, 466 U.S. 284 (1984), claims under Title VII, and other similar federal and local statutes, may be filed directly in federal or state court without first resorting to arbitration. Citing Alexander, Plaintiff points out that while arbitration proceedings allow an employee to vindicate his contractual rights, Title VII, and other analogous claims, are based on constitutional rights conferred by Congress, and which can only be properly addressed in the courts.

In Alexander, the Supreme Court held that an employee's statutory right to a trial under Title VII is not foreclosed by a prior submission of his contractual claims to final arbitration

under the non discrimination clause of a collective-bargaining agreement. 415 U.S. at 38.[6] As a result, the Court found that an employee may pursue his Title VII cause of action in court upon conclusion of arbitration. Id. at 59-60. In court, the employee should be afforded a *de novo* trial, although the arbitral decision "may be admitted as evidence and accorded such weight as the court deems appropriate." Id. at 60. Subsequently, the Court held that claims under Section 1983, and the Fair Labor Standards Act, are not barred by prior submission to arbitration proceedings brought pursuant to the terms of collective-bargaining agreements. See Barrentine, 450 U.S. at 745; McDonald, 466 U.S. at 292. In reaching its conclusion in Barrentine and McDonald, the Court expressed concern about the arbitrator's competence and authority to enforce statutory rights, as well as possible conflicts of interest between the union and the employees' rights that could encroach on the latter's rights. See id.

Notwithstanding, this Court notes that the Alexander line of cases dealt with collective-bargaining agreements, not an individual employee's waiver of his statutory rights. Moreover, the arbitration agreements in dispute did not expressly mandate arbitration of statutory anti discrimination claims, and instead focused on the union members' contractual rights. See 14 Penn Plaza LLC et al v. Pyett et al, 129 S. Ct. 1456, 1467 (2009). That is why the Supreme Court held that an arbitrator's resolution of contractual issues did not preclude a subsequent suit in federal court under Title VII. See id. In the present case, however, Mandara's DRP and Handbook expressly provide for arbitration of Title VII, and analogous anti discrimination statutory claims. Additionally, this case does not encompass a collective-bargaining agreement.

---

[6] It should be noted that even Alexander recognized that "Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices." Carey, 447 U.S. at 67. The Court held that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." Alexander, 415 U.S. at 48-49; see also New York Gaslight Club v. Carey, 447 U.S. 54, 67 (1980). Therefore, Congress has recognized flexible approaches to the resolution of claims under Title VII, the ADEA, and other analogous statutes.

Moreover, in <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 34, n. 5 (1991), the Supreme Court all but overruled <u>Alexander</u>, finding that the Court's previous "mistrust of the arbitral process" had been undermined by recent arbitration decisions, which radically changed this view, and  recognized the desirability of arbitration, as well as the competence of arbitral tribunals as an alternative means of dispute resolutions. <u>See also</u> <u>Penn Plaza</u>, 129 S. Ct. at 470; <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 231-32 (1987) (holding that <u>Alexander</u>'s view of arbitration "has been undermined by [the Supreme Court's] recent decisions"). Also the Court's recent analysis of such agreements has focused on whether a specific statute prohibits arbitration. <u>See</u> <i>cf.</i> <u>Utley</u>, 883 F.2d at 187 (noting that Title VII does not mandate exhaustion of arbitration before allowing an employee to proceed to court).[7]

In 2009, the Supreme Court reiterated <u>Gilmer</u>, noting <u>Alexander</u>'s "narrow scope", and pointing out that <u>Alexander</u> and its progeny "did not involve the issue of the enforceability of an agreement to arbitrate statutory claims." <u>Penn Plaza</u>, 129 S. Ct. at 1468 (citing <u>Gilmer</u>, 500 U.S. at 35). It continued, stating that "those decisions instead 'involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.'" <u>Gilmer</u>, 500 U.S. at 35. The Court also emphasized that "since the employees [in <u>Alexander</u>, <u>Barrentine</u>, and <u>McDonald</u>] had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." <u>Id</u>. Moreover, <u>Alexander</u> was not decided under the FAA. <u>See</u> <u>Gilmer</u>, 500 U.S. at 35.

In <u>Penn Plaza</u>, the Supreme Court also discussed <u>Alexander</u>'s misconceived view of arbitration, which ultimately led to "erroneously assumi[ing] that an agreement to submit statutory discrimination claims to arbitration was tantamount  a waiver of those rights." 129 S. Ct. at 1469.

_____

[7] However, in light of <u>Gilmer</u>, the First Circuit's decision in <u>Utley v. Goldman Sachs & Co.</u>, 883 F.2d 184 (1st Cir. 1989) has lost its precedential value.

This in spite of the fact that the "'Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law.'" Penn Plaza, 129 S. Ct. at 1469 (citing Circuit City v. Adams, 532 U.S. 105, 123 (2001). Furthermore, the Court addressed the mistaken belief that arbitration's flexible approach and informality make it are ill-equipped to deal with issues of law, specifically statutory claims. Id. at 1471. On this front, it pointed out that these misconceptions have been corrected, as shown in McMahon's recognition that arbitral tribunals are capable of handling the factual and legal complexities of antitrust claims, and apply the law accordingly. Id. (citing McMahon, 482 U.S. at 232). Consequently, the Court extended said holding to discrimination claims under the Age Discrimination in Employment Act ("ADEA"), highlighting that it is unlikely that age discrimination claims require more extensive discovery than other claims found to be arbitrable, such as RICO and antitrust suits. Id. (citing Gilmer, 500 U.S. at 31). Lastly, the Court noted that possible conflicts of interest between a union and its members have been properly addressed by Congress. Id. at 1472. Therefore, Alexander's holding that "in arbitration, as in the collective-bargaining process, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit," is no longer a concern. 415 U.S. at 58, n. 19.[8]

Finally, this Court notes that the First Circuit has found "no conflict between the language and purposes of Title VII...and arbitration." Rosenberg v. Merrill Lynch, 170 F.3d 1, 8 (1st Cir. 1999). In doing so, the Court pointed out that many "circuit courts have held that the Supreme Court's reasoning in Gilmer applies to Title VII claims and that pre-dispute agreements to arbitrate Title VII claims are permissible." Id.: see also Raiola v. Union Bank of Switzerland, 47

---

[8] The collective-bargaining agreement's language in Penn Plaza is very similar to Mandara's DRP and Hanbook, in that it expressly provides for arbitration of Title VII claims, and analogous laws. 129 S. Ct. at 1461.

F. Supp. 2d 499, 505 (S.D.N.Y. 1999); Hart v. Canadian Imperial, 43 F. Supp 2d 395, 404 (S.D.N.Y. 1999); Hooter of America v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999). Thus, since 1999 the First Circuit has recognized the arbitrability of Title VII claims, and other anti discrimination laws. See Bercovitch v. Baldwin School, 133 F.3d 141, 151 (1st Cir. 1998) (holding that ADA claims are arbitrable).

Plaintiff contends that the Puerto Rico Supreme Court's decisions in Medina -Betancourt v. Cruz Azul, 155 P. R. Dec. 735 (2001), and Playa Azul II support her position. However, in Playa Azul II, the Court explicitly stated that its decision did not imply the adoption of Alexander, Barrentine, and McDonald in Puerto Rico. Instead, Playa Azul II established an exception for claims under Law 100, noting that Article 4 of said law expressly provides that employees may resort to court without having to exhaust alternate remedies in other forums. See P.R. Laws Ann. tit. 29, § 149. Therefore, the Court did not extend its holding to claims under Law 3. Considering the Court's limited holding, and since this suit does not entail Law 100 claims,[9] this Court cannot extend Plaza Azul II to the present case. More so in light of recent case law that reiterates the importance of arbitration in Puerto Rico and the federal system. See Penn Plaza, 129 S. Ct. 1456; Soto-Alvarez, 561 F. Supp. 2d 228; Sanchez-Santiago, 512 F. Supp. 2d 75.

Similarly, in Cruz Azul, decided prior to Playa Azul II, the Puerto Rico Supreme Court held that an employee filing suit under Law 100 did not have to submit to arbitration prior to resorting to court because of the particular facts of the case. Specifically, the collective bargaining agreement excluded claims under Law 100 from compulsory arbitration. Unlike Cruz Azul,

---

[9] Plaintiff's claims arise under Title VII, Law 3, FMLA, and Law 80. Albeit discrimination because of pregnancy is considered a type of discrimination because of sex, Law 3 and Law 100's remedies, methodology, and language differ. Moreover, Law 3 provides additional protections for pregnant employees. See Rivera Aguila v. K-Mart de P.R., 1989 WL 550995 (P.R.), 23 P.R. Offic. Trans. 524 (1989).

however,  the arbitration agreement in this case expressly requires arbitration of Title VII claims.

Therefore, Plaintiff's arguments on this front also fail.

The Supreme Court has held that "[c]ontracts to arbitrate are not to be avoided by allowing

one party to ignore the contract and resort to the courts. Such a course could lead to prolonged

litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."

Southland Corp. v. Keating, 465 U.S. 1, 7 (1984). Since Plaintiff has not alleged lack of consent,

nor has shown that Congress intended to preclude arbitration of her claims, that her claims are

unsuitable for arbitration, or that federal and state law prohibit compulsory arbitration of her

claims, this Court must refer her claims to arbitration. See Green Tree Financial v. Randolph, 531

U.S. 79, 91-92 (2000) (citing Gilmer, 500 U.S. at 26). As previously stated,  the FAA mandates

district courts to direct the parties to proceed to arbitration on issues as to which an arbitration

agreement has been signed, thus leaving no room for discretion on this front. Dean Witter, 470

U.S. at 218. Also, it should be noted that the Supreme Court has held that, "by agreeing to arbitrate

a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only

submits to their resolution in an arbitral, rather than in a judicial, forum." Mitsubishi Motors, 473

U.S. at 628.[10]

Finally, this Court notes that both the FAA and the Puerto Rico Arbitration Act provide that

if any of the parties to a written arbitration agreement institutes action or other legal remedy, the

court before which said action or remedy is pending shall, after being satisfied that any dispute

involved in said action or remedy may be submitted to arbitration under said agreement, and on

motion of any of the parties to the arbitration agreement, order said action or remedy stayed, until

such time as the arbitration has been proceeded with according to the agreement. P.R. Laws Ann.

---

[10] Under the FAA, employees may seek review from the courts upon an arbitrator's decision, under certain circumstances. See 9 U.S.C. § 10.

**CIVIL NO. 09-1571 (SEC)**                                                12

tit. 32, § 3203; 9 U.S.C. § 3. Insofar as courts "may dismiss, rather than stay, a case when all of the issues are arbitrable," the instant case will be dismissed without prejudice. See Bercovitch, 133 F.3d at 156, n. 21.

**Conclusion**

Based on the foregoing, Defendants' motion to compel arbitration is **GRANTED,** and Plaintiff's claims are referred to arbitration pursuant to Mandara's DRP and Handbook. As a result, the instant case is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 18th day of February, 2010.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge